UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

\- - -

THE UNITED STATES OF AMERICA,

Plaintiff,

vs. Case No. 10-20416

EUGENE GIZZARELLI, Hon. Marianne O. Battani

Defendant.
________________________________/

PLEA HEARING

BEFORE THE HONORABLE MARIANNE O. BATTANI
United States District Judge
Theodore Levin United States Courthouse
231 West Lafayette Boulevard
Detroit, Michigan
Monday, February 7, 2011

APPEARANCES:

For the Plaintiff: ERIN SHAW
U.S. Department of Justice
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9100

For the Defendant: MARTIN E. CRANDALL
Clark Hill, P.L.C.
500 Woodward Ave., Ste. 3500
Detroit, MI 48226
(313) 965-8413

*To obtain a copy of this official transcript, contact:*
*Robert L. Smith, Official Court Reporter*
*(313) 964-3303 • rob_smith@mied.uscourts.gov*

TABLE OF CONTENTS

| | Page |
|---|---|
| Defendant Sworn | 4 |
| Defendant's Factual Basis | 19 |

Detroit, Michigan
Monday, February 7, 2011
at about 4:06 p.m.

_ _ _

(Court, Counsel and Defendant present.)

THE CASE MANAGER: All rise.

The United States District Court for the Eastern District of Michigan is now in session, the Honorable Marianne O. Battani presiding.

You may be seated.

This is United States vs. Eugene Gizzarelli.

THE COURT: Just one minute, please. May I have your appearances, please?

MS. SHAW: Good afternoon, Your Honor. Erin Shaw on behalf of the United States.

MR. CRANDALL: Good afternoon, Your Honor. Martin Crandall on behalf of Mr. Gizzarelli, who is standing to my right.

THE COURT: Okay. Why don't you come up to the podium.

MR. CRANDALL: Your Honor, my client stands before you ready to enter a guilty plea to Count 2 of the indictment in this matter, and there is a Rule 11 agreement that we executed on Friday which I believe was tendered to the Court Friday afternoon. I have gone over those conditions with my

client, I have gone over the Constitutional rights that he will be waiving pursuant to Rule 11, and I stand him -- I have him before the Court to enter that plea at this time, Your Honor.

THE COURT: All right. Mr. Gizzarelli; is that right?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Before I proceed, Bernie, would you swear him in.

THE CASE MANAGER: Raise your right hand. Do you solemnly swear that the testimony you are about give in this case will be the truth, the whole truth and nothing but the truth so help you God?

THE DEFENDANT: I do.

THE COURT: All right. Before I proceed I have a number of questions that I want to ask you so that I can be sure that you understand what you are doing, all right? If you at any time need to talk to your attorney or you have a question, will you stop me?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I will give you an opportunity to either ask Mr. Crandall or myself if you wish.

Now, you have been sworn to tell the truth so that if you don't then you subject yourself to further charges of perjury. Okay. Do you understand that?

THE DEFENDANT: I do.

THE COURT: Okay. Let me ask you first of all, what is your age?

THE DEFENDANT: 54.

THE COURT: And what is your education?

THE DEFENDANT: I have an associate's degree. I've completed four years, but I didn't get my bachelor's.

THE COURT: All right. And is there any reason why you couldn't understand what we are doing here?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you on any medication or any other drug that might interfere with that ability?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. And have you had an opportunity to review this entire matter with Mr. Crandall?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And are you satisfied with his representation?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, do you understand that under the Constitution and laws of the United States you're entitled to plead not guilty and to proceed to a trial either by a jury or the Court on the charges against you?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. At trial you would have the

right to be represented by counsel and if necessary to have the Court appoint counsel for you to represent you at trial and every aspect of the case. You would at trial be presumed innocent, and the Government would have to overcome that presumption of innocence and prove you guilty by competent evidence and beyond a reasonable doubt, and you would not have to present -- or you would not have to prove that you were innocent. Do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Also, in the course of a trial the witnesses for the Government would have to come into court and testify in your presence, and your lawyer could cross-examine these witnesses, and he could object to evidence offered by the Government, and your lawyer, of course, could offer evidence on your behalf. In fact, you would be able to use the subpoena force of the Court, that is, to have somebody to require them to come in and testify on your behalf even though they may not want to. Do you understand those things?

THE DEFENDANT: I do, Your Honor.

THE COURT: At trial while you would have the right to testify if you wanted to you also have the absolute right not to testify and no inference or suggestion of guilt could be drawn from the fact that you do not testify. Do you understand?

THE DEFENDANT: I do.

THE COURT: You also understand that if you plead guilty and I accept your plea you would give up your right to a trial and all the other rights that we have just gone through because there will be no trial, I will simply enter a judgment of guilty and sentence you on the basis of the guilty plea. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also do you understand that you waive your right not to incriminate yourself because I will ask you questions about what you did to satisfy myself that you are guilty and you will have to acknowledge your guilt. Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Considering all of these things, are you willing to give up these rights and to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. I'm going to ask the Government from the indictment, if you would, read the charges -- well, you can do it from your plea, I just mean let us know what the charges are against this Defendant?

MS. SHAW: The indictment alleges two charges but we are going to be pleading guilty today to one count of the indictment, which is Count 2.

THE COURT: Okay.

MS. SHAW: And that count alleges possession of child pornography in violation of Title 18, United States Code Section 2252(A)(a)(5)(B). The elements of that offense are that the Defendant knowingly possessed images and videos that contained images of child pornography, and that the images possessed by the Defendant had previously been transported in interstate commerce or were produced using materials which had been transported in interstate commerce.

THE COURT: And is there a mandatory minimum or maximum for that case?

MS. SHAW: There is no -- the maximum penalty would be ten years and by statute there is no mandatory minimum, but the parties have negotiated a floor in the Rule 11 agreement that would create a floor but it is not in the statute.

THE COURT: Right. Okay. So do you understand the charge?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Let me ask you, are you -- you understand that the mandatory term -- excuse me, not mandatory, but the maximum term is ten years. I know there has been something else worked out in the Rule 11, but that's what the statute allows. Do you understand that? You are looking a little hesitant.

MR. CRANDALL: It is ten.

THE COURT: That's the statutory maximum?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. And you understand that also it carries with it a term of supervised release when you get out of prison, and there's all of those other things that come with this particular charge like the registration for sex offenders. You understand if you do this you will be required to register?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The Court also has authority to order restitution but I don't think that's applicable here. Sometimes it does come up, but I'm not sure here.

MS. SHAW: Sometimes it does come up, and I will be in contact with our victim witness coordinator to see if any victims are seeking restitution, and if they are we will bring that to Probation Department's attention as soon as we can.

THE COURT: Is there any forfeiture outside of the pictures?

MS. SHAW: No.

THE COURT: And there is a $100 special assessment that the Court would add to this. Also, the Court has the obligation to apply the sentencing guidelines, and I know you must have gone over these with your attorney, and because I don't know what the terms of the Rule 11 but I know that

there is, as Counsel has indicated, there is a guideline range -- excuse me, there's a range there in terms of your sentence, but you understand that the Court has to look at what the guideline is, it is advisory, but I look at it to see what others in your circumstances would get, I look at what the recommended time periods are, I look at a lot of factors about you, they are called 3553 factors, and they really include everything about the nature of the crime and your background, et cetera.

But do you understand that because of all of those things that I have to look at that on occasion I do not accept the plea agreement, all right -- or I shouldn't say I don't accept it, I accept your plea but not the range, so if that happens -- if that should happen I would allow you to withdraw your plea and then you could proceed to trial. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Has anyone threatened you or forced you to plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Ms. Shaw, would you please -- I put the terms of the Rule 11, and I do have the Rule 11 here, and, Mr. Gizzarelli, I see a signature above your name on page 12. Did you sign this Rule 11 agreement?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you go over it with your attorney, each provision, before you signed this?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. Ms. Shaw.

MS. SHAW: Thank you, Your Honor. The first major category in the Rule 11 is the guideline range where the parties do not agree. The Government has calculated a guideline range of 97 to 121 months which would be capped at 120 because of the ten-year statutory cap, but the defendant has calculated a range of 78 to 97 months because he is contesting the applicability of a two-level increase for distribution of child pornography in the guidelines.

The Court is not bound by either party's recommendation concerning the guideline range, and the Defendant understands that he will have no right to withdraw his guilty plea if the Court does not follow his recommendation.

However, if the Court finds that Defendant's criminal history category is higher than reflected on the worksheets, which at this point is a zero, or that the offense level should be higher because after pleading guilty the Defendant makes a false statement to or withholds information from his probation officer or otherwise demonstrates a lack of acceptance of responsibility or obstructs justice or commits a new crime, and any such

finding results in a guideline range higher than the guideline range, the higher guideline range would apply.

If the Court finds that the Defendant is a career offender, an armed career criminal or a repeat and dangerous sex offender as defined under the sentencing guidelines and that finding is not really reflected in the worksheets, and it is not, this paragraph does not authorize any corresponding increase in the guidelines range.

Neither party may take a position concerning the guidelines that is different than their positions here in court today.

Next, turning to the provisions of imprisonment and supervised release, the sentencing in this case may not exceed the top of the guideline range as determined by the Government in paragraph 2-B, which is 120 months. And the parties have negotiated a floor in this case in exchange for the dismissal of the more serious charge against Defendant of receipt of child pornography which carries a five-year mandatory minimum. The parties have negotiated an agreed-upon minimum sentence which we have called in our agreement the negotiated floor.

In consideration for our dismissal of the five-year mandatory minimum charge of receipt of child pornography, the Defendant agrees to plead guilty to possession of child pornography and be sentenced at a minimum to the negotiated

floor.

The parties' negotiated floor contains the following mandatory conditions: First, that the Defendant could be sentenced to a custodial term of one day time served to be followed by seven years, which is 84 months, of supervised release. The Defendant shall spend the first six months of his term of supervised release at a community correctional facility in the Eastern District of Michigan to be designated by either the Bureau of Prisons or the Probation Department. It is my understanding from speaking with Mr. Crandall and with Probation that that would probably be Monica House but I don't know for certain.

THE COURT: I'm sorry. It is your understanding what?

MS. SHAW: It would be Monica House.

THE COURT: Okay.

MS. SHAW: During his term of residence at the community correctional facility Mr. Gizzarelli would be restricted to that residence at all times except for some very limited conditions where he could leave the campus. One would be for medical needs or treatment, another would be for mental health and sex offender treatment, and third would be his continued employment at the offices of Avon Plastic in Auburn Hills, Michigan where he is currently employed as the chief executive officer. He would be permitted to leave to

attend his job between the hours of 8:30 a.m. to 5:30 p.m. Monday through Friday on days when the company is open for regular business. And if he separates from or is no longer employed by that company he would be limited to the campus except for appointments for medical needs or treatment or mental health or sex offender treatment.

After the six-month period at the community correctional facility Mr. Gizzarelli would have to serve the next 18 months of supervised release under home incarceration at his permanent residence in Bloomfield Township. The same provisions would apply restricting his ability to leave the house that applied during the time at the community correctional facility where he's only permitted to leave to attend medical appointments for himself, mental health or sex offender treatment or to attend his job at Avon Plastics.

Following this term of home incarceration, which brings us after two years of the seven years supervised release, Mr. Gizzarelli would be on supervised release for an additional term of five years. The first two years of supervised release while he's in the community correctional facility and home incarceration he would be subject to GPS electronic monitoring. For the remaining five years of supervised release he will be subject to electronic monitor but the type of monitoring device needed will be determined by the Probation Department at that time.

He will bear all costs of confinement, supervision, therapy and electronic monitoring. In addition to any restitution that may be ordered by this Court to any specific victims, he will make a $50,000 contribution to the National Center for Missing and Exploited Children in Washington, D.C.

The United States may withdraw from this agreement if Defendant seeks to modify any of these mandatory conditions of sentencing or if the plea agreement is rejected.

This negotiated floor does not prevent the United States from advocating for or the Court from imposing a custodial sentence, nor does it preclude the Probation Department or the Court from imposing additional conditions of supervision.

So, in other words, the Government still fully intends to ask for a custodial sentence, this just creates a minimum possible sentence for Mr. Gizzarelli in consideration for us dropping the five-year mandatory minimum charge.

And then finally, if he violates any of these terms of supervised release his supervision may be revoked and a prison term may be imposed pursuant to 18 U.S.C. 3583.

As the Court previously noted, there is a special assessment of $100. There is no agreement as to fines, and there may be a restitution award if victims come forward seeking restitution.

Defendant acknowledges that he must register as a sex offender under the Sex Offender Registration and Notification Act.

As we have noted, if the Court accepts this agreement the Government would not bring any additional charges against the Defendant based on any of the conduct reflected in the worksheets, which include the charge alleged in Count 1 of the indictment for receipt of child pornography and any charges that relates to the child pornography found on one of Defendant's laptop computers that were located at his house that is not subject to the charges in this case.

THE COURT: I don't understand negotiated floor. I don't understand that.

MS. SHAW: What about it?

THE COURT: What does it mean?

MS. SHAW: It means that instead of having a five-year minimum he now has basically it is a two-year community correctional facility and home confinement period and five years of supervised release, but he can't be sentenced to probation outright or less than that. The reason that that's beneficial to Mr. Gizzarelli is that we are agreeing to drop the more serious charge of five years mandatory. So instead of having a five-year mandatory charge he has basically a floor where he is going to have to spend some time in a community correctional facility and then be

under very strict electronic monitoring and home confinement conditions.

THE COURT: But you're saying you're not going to recommend that, you're going to recommend custodial sentence?

MS. SHAW: I am. It is not an agreed floor, it is just a floor -- it is the lowest possible sentence that he could have under the terms of our agreement.

THE COURT: Do you have anything to say about that, Mr. Crandall?

MR. CRANDALL: I have to be very cautious about what I say, Judge, because I'm constrained to not violate the agreement and cause it to be withdrawn by the Government.

The negotiated floor was a hard negotiation that took place over many meetings with many levels of U.S. Attorney's Offices. We certainly argued for much less stringent conditions because of his employment and obligations to work and family, and this was the best I could receive.

THE COURT: All right. Yes, it is very good, and I don't know that I would even give this, so I guess I want to make that clear to you, Mr. Gizzarelli, that by this agreement has these terms in it but it certainly in no way binds this Court to give you a term which basically amounts to probation, and I don't want you to plead thinking that's what you are going to get because I don't know what you are

going to get. I don't know. I don't know your background, and I don't know anything about you right now, but I do know what these charges generally carry, and it is the rare case, and you may be that person, I'm not saying that you are or you are not, but it is the rare case where a sentence such as this, this floor, is given. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Do you agree, Mr. Crandall, that that's the substance of the material elements of the Rule 11?

MR. CRANDALL: I do, Your Honor.

MS. SHAW: Your Honor, I do have a few more to go through including the waiver of his right to appeal.

THE COURT: I was just going ask you about that.

MS. SHAW: Thank you. If the sentence imposed falls within or below the guideline range recommended by the Defendant in paragraph 2-B, the Defendant would waive any right to appeal his conviction or sentence, but if the sentence imposed is above that range he retains his right to directly appeal the Court's guideline determination. If the sentence imposed is at least the negotiated floor the Government agrees not to appeal the sentence.

I think it is also important to talk about the various rights to withdraw from the agreement given the Court's remarks. The Government may withdraw from the agreement if the Court rejects the plea agreement or

sentences the Defendant to less than the negotiated floor. The Defendant may withdraw from the agreement and may withdraw his guilty plea if the Court decides to impose a sentence higher than the maximum allowed by part 3. That's the only reason that he's allowed to withdraw from the agreement.

THE COURT: Okay. Do you understand that if the Court sentences you within this agreement that you give up your right to appeal?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. I know your criminal history is zero. Have you had any other contact with the criminal justice system?

THE DEFENDANT: No, Your Honor.

THE COURT: I think that we have already gone over that the Court does not have to accept this plea agreement and we are going to proceed now to take your plea, but as I indicated, if I don't accept it I will allow you to withdraw that plea if you wish and proceed to trial, okay?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay. Would you tell me in your own words what it is that you did that gives rise to this charge.

THE DEFENDANT: Approximately almost three years ago I was on a site and viewed material, it was a public site, but I viewed child pornography material, and that's

what caused the problem.

THE COURT: Did you download it, did you order it, what were the circumstances?

THE DEFENDANT: I didn't order it, I didn't sign for anything, but it was a public site and I openly viewed it. It was called Frostwire, and there were many things on there, not illegal, but I did view child pornography as part of that. It was -- I didn't save it, but it did save to my computer. I mean, I didn't purposefully put it into a file but it did save to the computer. I did do it, and it was the biggest mistake of my life.

THE COURT: It says here in the factual basis on page 2 that there were 43 videos of child porn. Is that what you looked at were videos and then they were saved automatically on your computer? Is that how you see this?

THE DEFENDANT: Yes, Your Honor. The account was -- I never knew the count, but I did view that and --

THE COURT: You're not disputing the count?

THE DEFENDANT: I'm not disputing it.

THE COURT: Do you have any questions?

MS. SHAW: I do, Your Honor.

Mr. Gizzarelli, did this conduct take place from about April 21st to approximately July 14th of 2008?

THE DEFENDANT: Yes, it did.

MS. SHAW: Was that at your home in Bloomfield

Township?

THE DEFENDANT: Yes, it was.

MS. SHAW: And that's in the Eastern District of Michigan?

THE DEFENDANT: Yes.

MS. SHAW: And did those videos that you had on your computer depict real children?

THE DEFENDANT: Yes, they did.

MS. SHAW: Were they engaged in sexually explicit conduct with adults?

THE DEFENDANT: Yes, they did.

MS. SHAW: Did you obtain those videos from the Internet?

THE DEFENDANT: I did.

MS. SHAW: And would you agree with me that by receiving those from the Internet that that constituted transportation of those videos in interstate commerce?

THE DEFENDANT: I do understand that now.

MS. SHAW: I have nothing further.

THE COURT: And some of those were children under 12?

THE DEFENDANT: Yes, Your Honor.

THE COURT: To the best of your knowledge.

Do you have any children.

THE DEFENDANT: Yes, Your Honor.

THE COURT: How old are they?

THE DEFENDANT: 25, 23, two sons, and my daughter is 21.

THE COURT: All right. Since you acknowledge that you are, in fact, guilty as charged, I believe that was in Count 2, since you know you have a right to a trial and what the maximum punishment is, and since you're voluntarily pleading guilty, I accept your plea of guilty and enter a judgment of guilty on the plea.

I find your plea is free and voluntary, that you fully understand the charge and penalty, that the plea agreement has been properly executed and that there is a factual basis for the plea.

The clerk is ordered to enter the plea of guilty now, and you stand convicted.

All right. Let me reiterate, sir, when I said I don't know if I would accept this, I truly don't know, but that's certainly not saying that I will not. All right. I know that you will be concerned about this until the sentencing date, and I wish I could allay your concerns more but I simply don't know enough about you at this point to say whether I would accept this.

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. We'll set the sentencing date for May 3rd, 2011 at 2:00.

MS. SHAW: Your Honor, Mr. Crandall and I are both going to be in trial in Ann Arbor on May 3rd at 2:00.

MR. CRANDALL: Are you sure?

MS. SHAW: I am sure. Maybe not at 2:00, we might be in trial until 1:00, but I don't think we can get back that quickly.

THE COURT: Okay. Let's reschedule it. How long is your trial?

MS. SHAW: I think about two weeks.

THE COURT: When are you starting?

MS. SHAW: The 3rd is our first day.

THE COURT: Let's do it a little bit before so we can get this over with.

THE CASE MANAGER: What day, Judge?

THE COURT: I didn't pick a date. I just thought before -- I would rather do it earlier than later because I think he needs to know the resolution. Can we do it the end of April?

THE CASE MANAGER: April 26th at 2:30. It is a Tuesday.

THE COURT: How is April 26th?

MS. SHAW: That's fine. Thank you.

THE COURT: All right.

MR. CRANDALL: I assume it works, Judge. I don't have my calendar with me, but I will certainly let

Ms. Thebolt know immediately.

THE COURT: It can be modified but I would rather not put it off for two weeks because he's going to be worried the whole time what the sentence is going to be, so the earlier we do it the better.

MR. CRANDALL: April 26th at what time?

THE CASE MANAGER: 2:30.

THE COURT: Any reason why bond should not be continued?

MS. SHAW: No.

THE COURT: Very good. We'll see you back here then April 26th.

MR. CRANDALL: Thank you, Your Honor.

MS. SHAW: Thank you.

THE CASE MANAGER: All rise.

(Proceedings concluded at 4:33 p.m.)

_ _ _

*CERTIFICATION*

I, Robert L. Smith, Official Court Reporter of the United States District Court, Eastern District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing pages comprise a full, true and correct transcript taken in the matter of THE UNITED STATES OF AMERICA vs. EUGENE GIZZARELLI, Case No. 10-20416, on Monday, February 7, 2011.

*s/Robert L. Smith*
Robert L. Smith, CSR 5098
Federal Official Court Reporter
United States District Court
Eastern District of Michigan

Date: 03/23/2011
Detroit, Michigan