UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v

Case No. 2:10-cr-20416-MOB-MAR
Hon. Marianne O. Battani

EUGENE GIZZARELLI,

Defendant.
_______________________________________/

# DEFENDANT EUGENE GIZZARELLI'S SENTENCING MEMORANDUM

## Mr. Gizzarelli's Personal Background

Before the Court for sentencing is Eugene Gizzarelli. For the reasons stated *infra*, Mr. Gizzarelli's counsel requests this Honorable Court sentence Mr. Gizzarelli, consistent with his Rule 11 Plea Agreement , to the agreed-upon minimum sentence ( the "Negotiated Floor.")

Mr. Gizzarelli is a 54 year old married male, residing with his wife, Janice, in Bloomfield Hills, Michigan. Mr. Gizzarelli has been married to Janice, for over 30 years and they have three children, Lee -25, Jay-23, and their daughter Jamie-21. Lee and Jamie currently live at home with Mr. Gizzarelli and his wife. Mr. Gizzarelli comes from a stable and caring family unit. Mr. Gizzarelli is one of two sons born of the union of James and Eugenia Gizzarelli. His brother passed away at the age of 30 from complications following a car accident. His father and mother remained married until his father passed away in March of 2009 at the age of 82 from a stroke. After his father's death, Mr. Gizzarelli moved his mother from Florida to Michigan so he could care for her; he continues to care for her on almost a daily basis. She has no other immediate family to rely on

and is currently 85 years old.

Mr. Gizzarelli's family has always been an important part of Mr. Gizzarelli's life. Janice describes Mr. Gizzarelli as a loving and supportive husband and father who wants nothing but the best for his children and has never acted inappropriately towards her or their children. According to Janice, Mr. Gizzarelli has an impeccable reputation amongst his friends, work colleagues and business associates, and is frequently called upon to provide advice and support, which he always willingly provides. Janice has witnessed him put his own life at risk to pull a woman out of a car accident without hesitation. Janice also recognizes that love and support Mr. Gizzarelli provides in helping both of their mothers (who currently suffer from serious health issues), and states that she desperately needs her husband's continued support to help her manage through these issues. Janice is committed to working through Mr. Gizzarelli's current criminal matter; she feels he has been extremely honest and open with her and has shown extreme remorse. Mr. Gizzarelli's son Jay describes his father as supportive, loving and dedicated to his family; his father always attended his sporting events, art galleries and ceremonies. Jay says his father has taught him the value of hard work and the importance of respect through his own actions. According to Jay, Mr. Gizzarelli is a great person to be around and always brings a smile to everyone surrounding him. Mr. Gizzarelli's daughter Jamie says that it is rare to find a person with the drive and determination that her father possesses. Jamie describes her father as a well-respected man among their community; he is always giving advice and donating his time to friends, employees and business partners. Moreover; she is proud that he is her father and credits his love and support for her success. **See Exhibit A, Letters from Janice, Jay and Jamie Gizzarelli.** The stable characteristics of Mr. Gizzarelli's family life should positively affect his sentence.

**Mr. Gizzarelli's Educational and Professional Background and Charitable Contributions**

Mr. Gizzarelli is an incredibly intelligent and hard working individual. After graduating from high school in Miami, Mr. Gizzarelli attended college at Oklahoma State on a golf scholarship, but later transferred to Miami Dade Community College, where he received an associate degree. Mr. Gizzarelli continued his education towards a bachelor's degree at Florida International University. In 1979, Mr. Gizzarelli pursued a professional golf career. After suffering from an injury to his arm, Gene was forced to delay his playing career, so in 1980 he took an assistant professional position at the Red Run Golf Club in Royal Oak, Michigan. However, because his golf career was plagued by injuries, he eventually opted out of the golf business, but he continues to play at a competitive level as an Amateur, a game demanding of the highest level of integrity. In the spring of 1984 he took a position with Mayne-McKenney, as a sales account representative. He successfully managed the Yazaki Corporation account, was promoted to International Director of Marketing and Sales and became a Mayne-McKenney partner in1994. In 1997, Mayne-McKenney merged with Yazaki Corporation, and Mr. Gizzarelli was promoted to President at Yazaki Corporation, one of the largest Automotive suppliers in the world. He resigned from Yazaki Corporation in 2001 to pursue other business ventures and to reduce his global travel. Mr. Gizzarelli formed PME International, LLC for a partnership group in 2002 which was sold in 2004. In 2005 he formed Companies Executive Partners International (EPI) a Sales and Consulting firm, and Raptor Enterprises with a partner, which he continues to run today. In 2005 he also started a relationship with Avon Plastic Products, Inc. Avon was on the brink of bankruptcy, and they hired Mr. Gizzarelli as a consultant to help turn the family owned business around. Mr. Gizzarelli became the acting CEO of Avon in 2006, and

after the owner passed away in 2007, the family asked Mr. Gizzarelli to stay on indefinitely. The once struggling company has been restructured both financially and operationally as a result of Mr. Gizzarelli. As a direct result of Mr. Gizzarelli's efforts, over 40 south-east Metro Detroiters are still employed today. Mr. Gizzarelli continues to assist other distressed companies in a consulting capacity to create growth and continued employment opportunities for their employees and he thoroughly enjoys this work. Mr. Gizzarelli's hard work ethic, entrepreneurship and determination should positively affect his sentence.

Outside of his professional obligations, Mr. Gizzarelli's charitable contributions and efforts are worthy of praise. Over the years Mr. Gizzarelli has dedicated significant amounts of time volunteering, educating others on financial responsibility. He has given educational speeches to both adult and children organizations about financing, starting ones own business, and providing customer satisfaction. He has offered extensive assistance to friends and organizations to help them get out of troubled financial situations. Mr. Gizzarelli has served as treasurer on the Board of the Forest Lake Country Club for three years. The Country Club's General Manager, Traci Bichalski, describes Mr. Gizzarelli's aid, direction and knowledge as indispensible to the financial well being of the Club. Ms. Bichalski's considers Mr. Gizzarelli as her professional mentor. She credits him for her own success as Club manager and for the Club's ability to survive the tough economic times of the past few years. **See Exhibit B, Letter from Ms. Bichalski.** Mr. Gizzarelli's selflessness and continual willingness to help others should positively affect his sentence.

## Mr. Gizzarelli's Strong Moral Character

Aside from his family, Mr. Gizzarelli is greatly revered by his friends, colleagues and members of the community. Mr. Gizzarelli is a friend and mentor to Stephen McKalko. Mr. McKalko is a single father to a 11 year old daughter. His daughter has been around Mr. Gizzarelli many times and Mr. Gizzarelli has never acted in an inappropriate manner towards her. Mr. McKalko completely trusts and respects Mr. Gizzarelli; in fact he says that the two people in the world he respects the most are his father and Gene Gizzarelli. Mr. McKalko says that Mr. Gizzarelli has opened his door to him at Christmas, Easter, Thanksgiving and other special occasions when he has had no where to go, has helped him with various business interests, and has had an overall positive impact on his life and on many other peoples lives. Daniel Wielhouswer, President of Club & Community Corporation in Boca Raton, Florida and friend to Mr. Gizzarelli for over thirty years, describes Mr. Gizzarelli as a wonderful father and an ethical, trustworthy and genuine professional who has never acted inappropriately in his presence. Likewise, Thomas Bryant, former Director of GM Worldwide Purchasing, states that over the 16 years he has known Mr. Gizzarelli, Gene has always been a valued friend, always willing to help others both professionally and personally and exhibits great understanding, passion and leadership. Mr. McParlan, who has known Mr. Gizzarelli for over 25 years, considers Mr. Gizzarelli to be honest, hardworking and a person he "would trust with anything he has, including the lives of his wife and children. Since the underlying incident occurred, Mr. McParlan concludes that Mr. Gizzarelli has been utterly ashamed and remorseful of his actions and has the "mind and hard to learn from his mistake and emerge an even better person."

Mr. Gizzarelli's strong character should weigh in his favor. **See Exhibit C, Letters from Mr. McKaklo, Mr. Wielhouswer, Mr. Bryant and Mr. McParlan.**

**Mr. Gizzarelli's Acceptance of Responsibility**

Mr. Gizzarelli has taken full responsibility for his actions and has cooperated with the Prosecutors and the Court in all relevant aspects. Mr. Gizzarelli recognizes that his actions, which were the direct result of poor judgment, curiosity, and a lack of knowledge of the law, and understanding regarding the Frostwire Program's functions, were completely unacceptable. While Mr. Gizzarelli was not personally responsible for the initial downloading and installation of the Frostwire Program onto his laptop, Mr. Gizzarelli candidly admits the illicit material's presence on the computer was the result of his viewing images via the Program and has never represented to the Court, Prosecutors, or investigating authorities otherwise. **See Exhibit D, Letters from Channelle Kizy-White Letter, Michael Fisher and Leo Niffeler.**

**Reports of Dr. Charles Clark, Dr. Philip Margolis, Dr. Adam Miller and Leo Niffeler**

As this case unfolded, Mr. Gizzarelli was interviewed and provided treatment from the above-noted doctors and therapists. In the case of Dr. Charles Clark, Dr. Philip Margolis and Dr. Adam Miller, Mr. Gizzarelli was interviewed at great length and submitted to a battery of testing and examination. With regard to Leo Niffeler, who is court appointed, Mr. Niffeler would provide treatment and counseling to Mr. Gizzarelli on a semi-monthly basis for the past 10 months.

All four of the doctors and therapists, based upon the clinical testing and interviews of Mr.

Gizzarelli, **concluded that he is not a pedophile, does not possess pedophilic tendencies and is not a danger to the community, his family or himself**. The reports identify the fact that Mr. Gizzarelli has taken responsibility for his actions and is remorseful of what occurred. The doctors and therapists unanimously conclude that Mr. Gizzarelli is being truthful and honest regarding his lack of knowledge of the Frostwire program, and his lack of intent to knowingly download the computer content which he viewed on a public site. **They find Mr. Gizzarelli to possess an extremely low likelihood of recidivism. See Exhibit E, Doctors' Reports.**

**Sentencing Considerations**

Pursuant to Title 18 of the United States Code Section 3553, the Court, in determining the particular sentence to be imposed, shall consider:

> (1) The nature and circumstances of the offense and the history and character of the defendant; (2) the need for the sentence imposed, (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission…

In *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 2005 U.S. Lexis 628 (2005), the United States Supreme Court held that the ranges contained in the Sentencing Guidelines are advisory, and that courts may tailor individual sentences to reflect other considerations, even when the resulting sentence falls outside of the ranges recommended by the Guidelines. Under *Booker*, the "overarching" goal of the Guidelines is to "'impose a sentence sufficient, but not greater than

necessary' to accomplish the goal of sentencing." *United States v. Kimbrough*, 128 S. Ct. 558, 2007 U.S. LEXIS 13082, 30-31 (2007).

In *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court set forth the procedures a sentencing court should follow in order to set an appropriate individualized sentence. These procedures give the defendant the opportunity to argue for a particular sentence, and allow the court to make an individualized assessment based on the facts presented, even if deviation from the guidelines is necessary. *Id.* at 596-97. Under this procedure, the trial court should not automatically presume that a sentence that falls within the guidelines is reasonable, because such a presumption would defeat the goals of individualized sentencing. *Id.* at 597.

The United States Supreme Court stated in *Booker* that the United States Sentencing Guidelines are advisory and require a sentencing court to consider guideline ranges, but it permits the court to tailor the sentences in light of other statutory concerns as well. *Id.* at 757. "Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Id.* at 764. Other sentencing goals to be considered by the sentencing court are that the sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and effectively provides the defendant with the needed medical care and educational or vocational training. *Id.* at 765.

It is respectfully submitted that neither defense counsel, nor Mr. Gizzarelli underestimate or downplay the nature, severity and gravity of the crime committed. The facts are the facts. Regardless of the motivation, exculpatory or explanatory factors involved, no one can escape the conclusion that Mr. Gizzarelli violated 18 USC §2252A(a)(5) by possessing images of child pornography on his computer hard-drive. The trauma suffered by those children and the effects of those acts, although

specifically unknown, can and are assumed by the Defendant to be grievous. The seriousness of the matter at hand is not underestimated by defense counsel and certainly has not lost its impression on Mr. Gizzarelli. However, it is respectfully requested that this Court consider and recognize that Mr. Gizzarelli's conduct, when compared to the broad spectrum of conduct committed by defendants charged with child pornography related offenses in the U.S. District Court for the Eastern District, Southern Division of Michigan, should be considered among the least dangerous, offensive and harmful of conduct prosecuted. Specifically, Mr. Gizzarelli's conduct falls immensely short of the affirmative conduct witnessed in other child pornography cases such as requesting videos or pictures through telephone calls, texting, online chatting, or emails. Moreover, Mr. Gizzarelli never sought to meet with and/or personally exploit any known minor, never purchased or attempted to purchase any illegal material, never signed up for any account or on any web site to view child pornography, never saved images onto other computer programs, disks or cds/dvds, never attempted to hide/mask the illicit files, and never attempted to email/intentionally distribute the illicit files, unlike many of the cases appearing before this District Court. Review of the sentences imposed by various judges in this District Court in child pornography related cases confirms that the severity of the sentence directly correlates with the severity and egregiousness of the particular defendant's conduct. In instance where the defendant merely possessed illicit material and did not take affirmative steps to exploit minors, courts have imposed non-incarceration sentences, recognizing that the circumstances did not warrant sentencing the defendant to prison. **See Exhibit F, Analysis of Child Pornography Related Sentences in the U.S. District Court for the Eastern District, Southern Division of Michigan.** In light of where Mr. Gizzarelli's conduct falls within the spectrum of criminal acts, a sentence to supervised release, without incarceration, would be just and fair. Additionally, Mr.

Gizzarelli, pursuant to the Plea Agreement, is required to make a substantial $50,000.00 "contribution" to the National Center for Missing and Exploited Children. Review of the child pornography related cases in the Eastern District of Michigan reveals that this case is the sole example in which a "contribution" of this size and magnitude was required as part of a plea agreement. Accordingly, Mr. Gizzarelli's significant financial payment should weigh in this favor. See *Id.*

**Conclusion**

With regard to Mr. Gizzarelli's sentencing, the Court has many options. Based upon the Rule 11 Plea Agreement's Negotiated Floor, Mr. Gizzarelli's background, the steps Mr. Gizzarelli has taken to address this situation, the professional opinions of Dr. Clark, Dr. Margolis, Dr. Miller and Mr. Niffeler, and the isolated nature of the offense, a sentence of supervised release, without incarceration, is warranted, and if given the opportunity, Mr. Gizzarelli will indeed respond well. For the reasons stated, a sentence ordering supervised release, without incarceration, would be most appropriate.

Respectfully submitted,

CLARK HILL PLC

By: /s/ Martin E. Crandall

Martin E. Crandall (P26824)
Jonathan M. Martone (P73035)
151 S. Old Woodward
Suite 200
Birmingham, MI 48009
(248) 642-9692
Attorneys For Defendant

Date: June 8, 2011